# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3439

_____

Niobrara River Ranch, L.L.C.,           *
a Nebraska Limited Liability            *
Company; Lee M. Simmons,                *
                                        *
                                        *
        Appellants,                     *
                                        *   Appeal from the United States
                                        *   District Court for the
        v.                              *   District of Nebraska.
                                        *
Royce Huber, Refuge Manager,            *
Fort Niobrara Wildlife Refuge;          *
Ron Cole, Refuge Supervisor;            *
Ralph Morganweck, Regional              *
Director for Region 6, U.S. Fish        *
and Wildlife Service; Steven A.         *
Williams, Director, U.S. Fish &         *
Wildlife Service; Gale A. Norton,       *
Secretary of the U.S. Department of     *
the Interior,                           *
                                        *
        Appellees.                      *

_____

Submitted: April 15, 2004
Filed:  July 8, 2004

_____

Before WOLLMAN, McMILLIAN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Niobrara River Ranch, L.L.C. and Lee Simmons (collectively, River Ranch) filed this lawsuit against four officials of the United States Fish and Wildlife Service and its supervising agency, the United States Department of the Interior (collectively, Service), under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), (D) (2000) (APA). River Ranch alleged the Service's denial of River Ranch's application for a Special Use Permit (SUP) to operate a commercial canoeing operation running through the Fort Niobrara National Wildlife Refuge (Refuge) was arbitrary, capricious, contrary to law, and violated the Tenth Amendment.[1] The district court[2] granted judgment in favor of the Service. We affirm.

## I. BACKGROUND

The Refuge comprises 19,131 acres located along both sides of the Niobrara River in north central Nebraska. The federal government owns the Refuge, and the Service manages the Refuge under the National Wildlife Refuge System Administration Act of 1966, as amended, 16 U.S.C. §§ 668dd-668ee (2000) (Refuge Act). In 1991, a 76-mile stretch of the Niobrara River, including the river flowing within the Refuge boundaries, was designated "scenic" pursuant to the Wild and Scenic Rivers Act of 1968, 16 U.S.C. §§ 1271-1287 (WSRA). Pursuant to the WSRA, scenic rivers "shall be preserved in free-flowing condition, and . . . they and their immediate environments shall be protected for the benefit and enjoyment of present and future generations." Id. § 1271.

The Refuge Act was amended in 1997, requiring the Service to develop comprehensive conservation plans (CCPs) for all refuges within fifteen years. In 1999, the Service developed a CCP for the Refuge, which announced the Service was

---

[1]River Ranch did not brief the Tenth Amendment claim below, and the district court deemed the claim abandoned.

[2]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

2

implementing a temporary moratorium providing "no new outfitters will be issued permits to launch canoes or tubes on the Refuge." The CCP further provided "[r]iver use on weekends in the summer will be capped at 1998 levels." The CCP explained that until a formal biological study could be completed, a temporary moratorium was the best means of controlling alleged overcrowding on the river. The CCP also stated the Service would prepare a River Management Plan (Plan) within two years, but, subsequently, the Service revised the Plan's estimated implementation date to the 2004 river season. Once prepared, the Plan will define acceptable river use levels.

In late November 2002, River Ranch filed a SUP application to provide canoe, tube, and kayak outfitting, which the Service denied in January 2003. In the notice of denial, the Refuge Manager explained the Service could not issue the SUP until the biological study and Plan were completed. River Ranch appealed the initial denial to the Refuge Supervisor, who also denied the application on the same bases. River Ranch then appealed the second-level denial to the Regional Director in Denver and requested oral argument. The Regional Director granted the request for oral argument, but later denied the appeal, issuing a final agency order in May 2003 affirming the SUP denial and reiterating the need for a temporary moratorium until the completion of the biological study and Plan.

After exhausting its administrative remedies, River Ranch filed this lawsuit in June 2003, seeking declaratory and injunctive relief. At the request of the parties, the court expedited trial in the case. Following a bench trial and oral arguments, the district court held "the Service's denial of the permit was lawful even though the Service ha[d] been late in the development of its promised river management plan." The district court properly recognized the "deference owed administrative agencies in cases like this is 'substantial,'" while recognizing "'deference' does not mean 'rubber stamp.'" (citation omitted).

The district court rejected River Ranch's argument that no empirical evidence existed to substantiate limiting the number of permit holders or to "grandfather" existing permit holders. Instead, the district court found that, considering the "documented evidence of rapidly increasing canoe usage and its potential for 'devastation' of nesting birds, it was entirely reasonable for the Service to impose a moratorium." The district court also rejected River Ranch's argument that, by 2003, river usage had declined significantly, the Plan was long overdue, and consequently, no legitimate basis existed for denying the SUP, because River Ranch's river usage would not cause total river usage to exceed the 1998 cap established by the CCP. The district court ruled "nothing [was] improper about denying a license to a new user even though river usage by former users had declined." Moreover, the district court noted that although the Plan was long overdue, the delay, while troubling, was not a sufficient reason to invalidate the Service's denial of the SUP. Concluding River Ranch had not met its burden of proving the Service had violated the law in denying the SUP, the district court granted judgment in favor of the defendants and dismissed the case with prejudice.

On appeal, River Ranch argues (1) the temporary moratorium suspending issuance of SUPs to new outfitters is not supported by a determination of "necessity"; (2) the record evidence fails to establish the "reasonableness, necessity and appropriateness" of the temporary moratorium; and (3) the temporary moratorium is a management practice inconsistent with the requirements of the Refuge Act, because the temporary moratorium discourages wildlife-dependent recreation instead of encouraging recreation. For these reasons, River Ranch argues the Service's refusal to issue a SUP is contrary to law and should be set aside. The Service contends the recreational use issue is one of "compatible use," and the Service's interpretation of the Refuge Act should be given deference by this court. Moreover, the Service argues it did not rely upon the "emergency power" provision of the Refuge Act, because the Service did not suspend existing activities in the Refuge, but rather established a temporary moratorium on issuing SUPs to new outfitters.

## II. DISCUSSION

We review de novo a district court's decision whether an agency action violates the APA. St. Luke's Methodist Hosp. v. Thompson, 315 F.3d 984, 987 (8th Cir. 2003). Under the APA, an agency action shall not be set aside, as relevant here, unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory . . . authority," id. § 706(2)(C); or "without observance of procedure required by law," id. § 706(2)(D). Our scope of review is narrow, and we may not substitute our judgment for that of the Service. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); Rauenhorst v. Dep't of Transp., 95 F.3d 715, 718-19 (8th Cir. 1996). However, an agency must provide a satisfactory explanation for its actions based on relevant data. Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. Our review is limited to determining whether a challenged agency decision considered "the relevant factors" and whether an agency has committed "a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).

Mindful of our narrow standard of review and the deference we must afford to agency decisions, we conclude River Ranch failed to prove the Service's temporary moratorium on issuing SUPs to new outfitters is "arbitrary, capricious, an abuse of agency discretion," or contrary to law; "in excess of statutory . . . authority"; or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). In instituting a temporary moratorium until such time as the river study is completed and a Plan defining acceptable river use is prepared and implemented, the Service properly considered the relevant factors and exercised its broad discretionary authority to manage the Refuge. Based on the record, we conclude the Service committed no clear error of judgment. See id.

We reject River Ranch's argument that the Service violated the Refuge Act by implementing a temporary moratorium and by capping weekend river use to 1998

5

levels. The Refuge Act does not require the Service to issue SUPs to new outfitters while the Service studies the need to reduce river use. We also reject River Ranch's argument that the temporary moratorium violates the "emergency power" provision of the Refuge Act. The Service has ample statutory authority to restrict recreational use during the pendency of the river study and Plan implementation, and does not need to exercise emergency power while it evaluates river use. Although some interested parties may disagree with the Service's decision to deny River Ranch a SUP, mere disagreement with an agency decision does not render the Service's decision arbitrary or capricious. While we acknowledge alternate means of limiting river use exist, we cannot, on the record before us, conclude the Service's decision to implement a temporary moratorium on new outfitting operations is arbitrary, capricious, an abuse of agency discretion, or contrary to law; nor is the Service's decision "in excess of statutory . . . authority" or "without observance of procedure required by law." Id.

## III.   CONCLUSION

We affirm the well-reasoned and thorough decision of the district court dismissing the complaint with prejudice. We reiterate the district court's comment that unreasonable delay here by the Service may become arbitrary, capricious, and an abuse of discretion.

_____

6